# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| Champion Laboratories, Inc., | |
| Plaintiff, | Case No. 14 CV 9754 |
| v. | Judge John Robert Blakey |
| Central Illinois Manufacturing Co., | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

This is a false advertising dispute brought under the Lanham Act and the Illinois Deceptive Trade Practices Act. Plaintiff Champion Laboratories and Defendant Central Illinois Manufacturing are the leading manufacturers and suppliers of fuel dispensing filters in the United States. Plaintiff alleges that in certain advertisements, Defendant falsely touted the benefits of its filters or made false claims about Plaintiff's filters.

In the same motion [20], Defendant moves to dismiss Plaintiff's false advertising claims under Federal Rule of Civil Procedure 12(b)(6) and also moves to strike certain purportedly immaterial and impertinent materials in the Complaint [1] under Rule 12(f). The motions are denied.

**I.  Legal Standard**

Under Rule 12(b)(6), this Court must construe the Complaint in the light most favorable to Plaintiff, accept as true all well-pleaded facts and draw reasonable inferences in their favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915

(7th Cir. 2013); *Long v. Shorebank Development Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Statements of law, however, need not be accepted as true. *Yeftich*, 722 F.3d at 915. Rule 12(b)(6) limits this Court's consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

To survive Defendant's motion under Rule 12(b)(6), the Complaint must "state a claim to relief that is plausible on its face." *Yeftich*, 722 F.3d at 915. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## II. Facts

This dispute involves the purportedly false advertising of fuel dispensing filters. Fuel dispensing filters are incorporated in fuel dispensing equipment, such as gas pumps, and they are designed to remove particulate contaminants from petroleum and other fuels before being dispensed into a vehicle. Complaint ¶¶ 16-17.

The parties here are the two primary manufacturers and suppliers of fuel dispensing filters in the United States. Complaint ¶¶ 2, 26-27. Together, they supply more than half the fuel dispensing filters purchased in the United States annually. Complaint ¶ 27. Plaintiff markets its filters under the brand name PetroClear, and Defendant markets its filters under the brand names Cim-Tek and

Bio-Tek. Complaint ¶¶ 3, 9, 11; *see generally* Advertisements, attached as Exhibits B to F to Complaint. The companies have many of the same customers, and the customers rely on Plaintiff and Defendant to provide them with the information necessary to make an informed purchasing decision, including through advertisements in *PEI Journal*. Complaint ¶¶ 33-37. *PEI Journal* is a quarterly publication of the Petroleum Equipment Institute, a trade association. Complaint ¶¶ 38-39.

The distinguishing and well-known difference between the filters that the parties sell is their composition. Complaint ¶¶ 29-30. Plaintiff manufactures and sells filters made from cellulose, whereas Defendant principally manufactures and sells filters made from microglass. Complaint ¶¶ 30-31.

Plaintiff brings claims under the Lanham Act (Count I) and the Illinois Deceptive Trade Practices Act (Count II) alleging that in certain advertisements, Defendant falsely touted the benefits of its microglass filters or made false claims about Plaintiff's filters. This Court analyzes each advertisement below.

III. Analysis

    A. **Motion to Dismiss**

To state a false advertising claim under the Lanham Act, 15 U.S.C. § 1125(a)(1), Plaintiff must show that Defendant: (1) made a false or misleading statement; (2) that actually deceives or is likely to deceive a substantial segment of the advertisement's audience; (3) on a subject material to the decision to purchase the goods; (4) touting goods entering interstate commerce; and (5) that results in

actual or probable injury to Plaintiff. *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 971 (7th Cir. 1999); *LG Electronics U.S.A., Inc. v. Whirlpool Corp.*, 661 F. Supp. 2d 940, 947-48 (N.D. Ill. 2009). The first element captures both statements that are literally false as a factual matter and statements that are ambiguous but convey a false or misleading impression in context. *B. Sanfield*, 168 F.3d at 971-72; *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819-20 (7th Cir. 1999); *Dyson, Inc. v. Bissell Homecare, Inc.*, 951 F. Supp. 2d 1009, 1029, 1031 (N.D. Ill. 2013). Because this Court must look at context to determine if a statement is false, it follows and, indeed, is well-settled in this Circuit, that whether a statement is false is an issue of fact rather than law. *Mead Johnson & Co. v. Abbott Laboratories*, 209 F.3d 1032, 1034 (7th Cir. 2000); *B. Sanfield*, 168 F.3d at 972 n.3; *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 13 (7th Cir. 1992); *LG Electronics*, 661 F. Supp. 2d at 948 (collecting cases).[1]

Here, with respect to each advertisement at issue, Defendant moves to dismiss Plaintiff's claims, arguing that Plaintiff has not established the first element: a false or misleading statement. This Court examines the advertisements in turn and, drawing all inferences in Plaintiff's favor, concludes that it is premature to dismiss Plaintiff's claims.

---

[1] Plaintiff's brings a second count for violation of the Illinois Deceptive Trade Practices Act. Complaint ¶¶ 85-90. The legal inquiry here is the same under both the Lanham Act and the Illinois Deceptive Trade Practices Act, so this Court considers the two statutes together. *See LG Electronics*, 661 F. Supp. 2d at 947 n.4; *Morningware, Inc. v. Hearthware Home Products, Inc.*, 673 F. Supp. 2d 630, 639 (N.D. Ill. 2009).

### 1. Claim A: "Return to Full Flow"

In 2014, Defendant took out an advertisement in *PEI Journal* that touted three comparative advantages of Cim-Tek ethanol filters against "competitor's filters." Specifically, under the header "BETTER," Defendant stated: "Cim-Tek ethanol filters reduce the flow of fuel if phase separation is detected and will not return to full flow as with competitor's filters." Complaint ¶¶ 46-47; Return to Full Flow Advertisement, attached as Exhibit B to Complaint. Phase separation refers to when ethanol blended fuel is contaminated with water, causing the ethanol and water to separate from the gasoline. Complaint ¶¶ 48-50. Defendant is claiming that Cim-Tek filters (1) detect the phase separation, (2) adjust by slowing the flow of fuel—and thus do not "return to full flow" unlike "competitor's filters"—and (3) alert the operator that maintenance is required. Complaint ¶¶ 24-25, 51-53.

Plaintiff interprets this advertisement to mean that (1) Cim-Tek ethanol filters do not "return to full flow" (2) "as with competitor's filters," namely, PetroClear filters. Complaint ¶¶ 44, 54. Plaintiff does not dispute that Cim-Tek filters return to full flow, but rather disputes that its filters also do not "return to full flow."

Defendant argues that the advertisement is not false because it does not draw any conclusions about whether PetroClear filters return to full flow. [21] at 4. Defendant emphasizes that the relevant language in the advertisement, the phrase "competitor's filters," makes no explicit reference to Plaintiff or PetroClear filters.

5

[21] at 4. Instead of referring to PetroClear filters, therefore, the advertisement refers to *other* filters that do not return to full flow. [21] at 4-5.

Defendant's argument relies on a mistaken assumption of law. An advertisement can be false even if it does not explicitly name Plaintiff. *See, e.g.*, *Forest River, Inc. v. Heartland Recreational Vehicles, LLC*, No. 09-302, 2010 WL 2674540, at *1-2 (N.D. Ind. June 29, 2010) (advertisement referred to "The Competition"); *Morningware*, 673 F. Supp. 2d at 638 (advertisement asked "Why Buy an Imitation?"); *see also Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 162 (2d Cir. 2007); *Reckitt Benckiser Inc. v. Motomco Ltd.*, 760 F. Supp. 2d 446, 453 (S.D.N.Y. 2011). These cases instruct that this Court must look beyond the advertisement itself and to its context.

*Forest River* is particularly informative. The advertisement there identified 24 points of comparison between the defendant's RVs and "The Competition." 2010 WL 2674540, at *1. Despite the fact that the advertisement did not name the plaintiff, the plaintiff prevailed at the motion to dismiss stage. *Id.* at *2. Two of the fourteen pictures of "The Competition" in the advertisement showed the plaintiff's RVs and revealed its logo, thereby misleading readers into believing that the other pictures also showed features of the plaintiff's RVs. *Id.* at *1-2.

Thus, based on the present pleadings alone and drawing all inferences in Plaintiff's favor, this Court cannot conclude that Defendant was *not* drawing a comparison to PetroClear filters by referring to "competitor" in its advertisement— or at least that consumers did not understand the advertisement that way. Plaintiff

6

has pled, and this Court must assume as true at this initial stage, that the two parties: (1) are the leading suppliers of fuel dispensing filters and related products in the United States; (2) by volume, sell more than half the filters purchased in this country annually; and (3) sell to the same customers who rely on advertisements when making purchasing decisions. Complaint ¶¶ 26-27, 33, 37. While Defendant may be correct that the market for filters is less concentrated than the market involved in *Time Warner*, *see* [34] at 3-4, the logic of that case remains compelling here. As with the cable market, many customers deciding on which filter to purchase are choosing between the two options: Cim-Tek or PetroClear. *See* Complaint ¶¶ 33, 44-45. Accordingly, when Defendant uses the word "competitor" and is touting the benefits of microglass filters elsewhere in the advertisement, those customers may infer that Defendant is referring to Plaintiff's cellulose filter.

Moreover, Defendant's advertisement uses the singular ("competitor's filters") and not the plural ("competitors' filters") when referring to the competition. This further suggests that the advertisement draws a comparison between Cim-Tek and PetroClear filters—the principal products in the filter market—and not one of the 25 other competitors with smaller market shares, as Defendant argues, *see* [34] at 3. The Court's decision in *LG Electronics* is informative on this point. As with the competing interpretations of the singular versus plural here, there were competing interpretations of the word "steam" in the advertisements at issue in *LG Electronics* which led the Court to deny summary judgment. 661 F. Supp. 2d at 949.

### 2. Claims B and D: Tests

Defendant has lauded the performance of Cim-Tek filters based on two tests. In March 2013, Defendant issued a Press Release stating that the "nozzle-snap test" shows that Cim-Teck filters "catch and retain <u>significantly</u> more particulates when compared to competitive filters." 3/26/13 Press Release, attached as Exhibit C to Complaint (emphasis in original); *see also* Complaint ¶¶ 55-57. Defendant also published on its webpage a Spring Flyer that stated that the "heavy duty spring element movement test" found that "Cim-Tek filters have a greater resistance than that of our competitors' filters." Complaint ¶¶ 71-73.

Plaintiff does not dispute these test results but rather argues that neither is industry accepted or correctly validates a fuel dispensing filter's performance or strength. Complaint ¶¶ 57, 73. This argument finds support from *Abbott Laboratories*, 971 F.2d at 15, where the Seventh Circuit credited arguments that a particular comparison drawn between two drugs may be false because it had no therapeutic significance and lacked a firm scientific grounding.

Defendant does not address the merits of Claims B and D but instead responds that they have not been pled with sufficient specificity under Rule 8(a). [21] at 5-6. Defendant specifically points to *Riddell, Inc. v. Schutt Sports, Inc.*, 724 F. Supp. 2d 963 (W.D. Wis. 2010). That was a summary judgment decision, however, so it naturally does not address Plaintiff's pleading obligations. Nor does Defendant cite any case granting a motion to dismiss.

At bottom, Defendant demands too much at this early stage. Plaintiff has pled that the two tests here are neither industry accepted nor a valid measure of the filter's performance or strength. Complaint ¶¶ 57, 73. That, and the other facts pled by Plaintiff, is enough to state a viable claim. *See Yeftich*, 722 F.3d at 915.

### 3. Claim C: Dirt Holding Capacity and Savings

In Claim C, Plaintiff points to two categories of false statements. First, Defendant issued a white paper stating in its title that customers "Save 20% to 50% by using Bio-Tek Dispenser Filters." Complaint ¶ 66. The white paper has a table that compares the total costs of buying and replacing two filters with model numbers: (1) "Cellulose (Paper) 70015 (400-10)" and (2) "Bio-Tek 400BMG-10 (Microglass), 70104." White Paper, attached as Exhibit E to Complaint. Both model numbers refer to filters made by Defendant. [21] at 8-9; [34] at 7. Although Plaintiff initially pled that the first model ("Cellulose (Paper) 70015 (400-10)") was one of its filters, in response to Defendant's motion papers, Plaintiff has now conceded its mistake. *Compare* Complaint ¶ 68, *with* [33] at 10. The table concludes that the Bio-Tek filter saves 27.7 percent over the cellulose filter. White Paper, attached as Exhibit E to Complaint.

Despite the mistake, Plaintiff can proceed on a theory that the white paper is misleading even if not literally false. The table states only the model number and not the brand name of the cellulose filter, and a reasonable customer may not understand Defendant to be comparing two of its own products. Supporting this argument, Plaintiff has pled that the defining difference between its filters and

9

Defendant's filters is their composition—cellulose for Plaintiff and microglass for Defendant. Complaint ¶¶ 30-31. Also supporting this argument, the white paper contains a blown up notation on the side stating that "competitors" use cellulose filters: "Fact: Competitors' Filters use Cellulose (paper) media." White Paper, attached as Exhibit E to Complaint.

Second, in two 2014 advertisements in *PEI Journal*, Defendant claimed that Cim-Tek filters hold "approximately three times more dirt than cellulose filters" and are the "only microglass dispenser filter in the petroleum industry with up to 2X the dirt-holding capacity," respectively. Complaint ¶¶ 59, 62-63.

Plaintiff contends that the second advertisement ("up to 2X") shows that the first advertisement ("approximately three times") is false; and further argues that according to industry accepted tests, the holding capacity of microglass filters is not three times more than cellulose filters. Complaint ¶¶ 60, 62, 65. As it has argued before, Defendant again argues here that it was not drawing a comparison to PetroClear filters in the first advertisement but rather to its own filters. [21] at 7. Defendant also argues that the two advertisements are making different comparisons, so they are not contradictory. [21] at 7-8.

Once again, Plaintiff has pled a viable claim. Defendant does not presently dispute that the industry rating of microglass filters contradicts its claim that Cim-Tek filters hold "approximately three times more dirt than cellulose filters," Complaint ¶ 62, so one or both of the advertisements may be literally false. Also, this Court cannot say at this early stage whether, as explained above, readers

would understand the advertisements to be drawing a comparison to Plaintiff's filters or not.

## B. Motion to Strike

Defendant moves under Rule 12(f) to strike references to a prior lawsuit between the parties: Complaint ¶¶ 1, 4, 5, 42 and 43 and Exhibit A. The prior case was captioned: *Champion Laboratories, Inc. v. Central Illinois Manufacturing Co.*, No. 06-891 (N.D. Ill.). According to a March 29, 2006 Consent Decree and Dismissal Order entered in that case and attached to the Complaint as Exhibit A, the parties reached a settlement. The Consent Decree is a public document accessible through the docket sheet for Case No. 06-891. Plaintiff does not attach the settlement agreement itself.

In support of its motion, Defendant argues that the Consent Decree contained no finding of wrongdoing by it, and that Plaintiff improperly interjected the issue into the Complaint under Federal Rules of Evidence 404(b)(1) (certain character evidence is inadmissible) and 408(a) (certain settlement evidence is inadmissible). [21] at 10-13. Plaintiff responds that the prior lawsuit is relevant to its claim for costs and fees under the Lanham Act and UDTPA. [33] at 11-12. Those statutes allow costs and fees where a defendant has willfully engaged in a deceptive trade practice. 15 U.S.C. § 1117(a); 715 ILCS 510/3.

The motion to strike is denied. Defendant correctly admits that motions to strike are disfavored, *see Heller Financial Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989), and this case is not an exception to that general

11

rule. At this early stage, this Court cannot say that the prior litigation between the parties bears no possible relation to Plaintiff's claim for costs or fees. *See Forest River*, 2010 WL 2674540, at *2-3 (denying a motion to strike based on a potential claim for fees under Section 1117(a)). If Plaintiff introduces improper evidence about the prior litigation in later motion practice, at a hearing or at trial, this Court will address its admissibility then.

**IV.  Conclusion**

Defendant's motion to dismiss and motion to strike [20] are both denied. The status hearing previously set for June 23, 2015 is struck and reset to May 19, 2015 at 9:45 a.m. in Courtroom 1725. At that time, the parties should be prepared to report on the status of settlement and set case management dates, including a close of fact discovery.

Dated: May 8, 2015

                                        Entered:

                                        _____
                                        John Robert Blakey
                                        United States District Judge