# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHAMPION LABORATORIES, INC., | |
| Plaintiff and Counterclaim Defendant, | Case No. 14 C 9754 |
| v. | Judge John Robert Blakey |
| CENTRAL ILLINOIS MANUFACTURING CO., | |
| Defendant and Counterclaim Plaintiff. | |

## MEMORANDUM OPINION AND ORDER

This is a false advertising dispute under the Lanham Act and the Illinois Deceptive Trade Practices Act. Plaintiff and Counterclaim-Defendant Champion Laboratories, Inc. ("Champion Laboratories") and Defendant and Counterclaim-Plaintiff Central Illinois Manufacturing Company ("CIMCO") are the leading manufacturers and suppliers of fuel dispensing filters in the United States. This Court previously denied CIMCO's motion to dismiss. [37] Then CIMCO, in the same pleading [42], answered the Complaint, raised 11 affirmative defenses and brought a Counterclaim against Champion Laboratories. In its Counterclaim, CIMCO alleges that in certain advertisements Champion Laboratories falsely touted the benefits of its filters or made false claims about CIMCO's filters.

Champion Laboratories now moves to partially dismiss [47] CIMCO's Counterclaim under Federal Rule of Civil Procedure 12(b)(6) and also moves to

strike [47] CIMCO's affirmative defenses under Rule 12(f). Both motions are granted in part and denied in part.

I. **Legal Standard**

The legal standard for a motion to dismiss a counterclaim is the same as for a motion to dismiss a complaint. *Cozzi Iron & Metal Inc. v. U.S. Office Equipment, Inc.*, 250 F.3d 570, 574 (7th Cir. 2001). Under Rule 12(b)(6), this Court must construe the Counterclaim in the light most favorable to the pleading party (here, CIMCO), accept as true all well-pleaded facts and draw reasonable inferences in their favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013); *Long v. Shorebank Development Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Statements of law, however, need not be accepted as true. *Yeftich*, 722 F.3d at 915. Rule 12(b)(6) limits this Court's consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

To survive Champion Laboratories' motion under Rule 12(b)(6), the Counterclaim must "state a claim to relief that is plausible on its face." *Yeftich*, 722 F.3d at 915. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## II. Facts

This dispute involves the purportedly false advertising of fuel dispensing filters. Fuel dispensing filters are incorporated in fuel dispensing equipment, such as gas pumps, and are designed to detect water and remove water particles from fuel before they are dispensed into a vehicle. Counterclaim ¶¶ 3, 5.

The parties here are competitors in the fuel dispensing filter market. Counterclaim ¶¶ 9-10. Champion Laboratories markets its filters under the brand name "PetroClear," and CIMCO markets its filters under brand names including "Cim-Tek" and "Bio-Tek." Counterclaim ¶¶ 3-4.

CIMCO brings Counterclaims under the Lanham Act (Count I) and the Illinois Deceptive Trade Practices Act (Count II), alleging that in four advertisements, Champion Laboratories falsely touted the benefits of its filters or made false claims about CIMCO's filters. Champion Laboratories moves to dismiss the claims associated with three of the four advertisements, and for the purposes of this Court's analysis, these three advertisements will be referred to as "Advertisement 1," "Advertisement 2" and "Advertisement 3," as discussed below.

## III. Analysis

### A. Motion to Dismiss

To state a false advertising claim under the Lanham Act, 15 U.S.C. § 1125(a)(1), CIMCO must show that Champion Laboratories: (1) made a false or misleading statement; (2) that actually deceives or is likely to deceive a substantial segment of the advertisement's audience; (3) on a subject material to the decision to

purchase the goods; (4) touting goods entering interstate commerce; and (5) that results in actual or probable injury to CIMCO. *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 971 (7th Cir. 1999); *LG Electronics U.S.A., Inc. v. Whirlpool Corp.*, 661 F. Supp. 2d 940, 947-48 (N.D. Ill. 2009).

The first element captures both statements that are literally false as a factual matter and statements that convey a false or misleading impression in context. *B. Sanfield*, 168 F.3d at 971-72; *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819-20 (7th Cir. 1999); *Dyson, Inc. v. Bissell Homecare, Inc.*, 951 F. Supp. 2d 1009, 1029, 1031 (N.D. Ill. 2013). Because this Court must look at the context of a statement to determine if it is false, the question of whether a statement is false is an issue of fact, rather than law. *Mead Johnson & Co. v. Abbott Laboratories*, 209 F.3d 1032, 1034 (7th Cir. 2000); *B. Sanfield*, 168 F.3d at 972 n.3; *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 13 (7th Cir. 1992); *LG Electronics*, 661 F. Supp. 2d at 948 (collecting cases).[1]

Here, in support of its motion to dismiss, Champion Laboratories offers a different argument with respect to each advertisement. Champion Laboratories argues: (1) that Advertisement 1 is mere puffery; (2) that CIMCO's challenge to Advertisement 2 is time-barred; and (3) that Advertisement 3 does not affect United States commerce, let alone Illinois commerce. This Court analyzes each advertisement in turn and, drawing all inferences in CIMCO's favor, concludes that

---

[1] CIMCO brings a second count for violation of the Illinois Deceptive Trade Practices Act. Counterclaim ¶¶ 134-41. The legal inquiry here is the same under both the Lanham Act and the Illinois Deceptive Trade Practices Act, so this Court considers the two statutes together. *See LG Electronics*, 661 F. Supp. 2d at 947 n.4; *Morningware, Inc. v. Hearthware Home Products, Inc.*, 673 F. Supp. 2d 630, 639 (N.D. Ill. 2009).

4

it is premature at this stage of the proceedings to dismiss CIMCO's claims regarding the first two advertisements but not the third.

### 1. Advertisement 1: "World's Most Extensive Dispenser-Filter Research-And-Development Facility"

For an unstated period of time, Champion Laboratories has included the following statement on its homepage (www.petroclear.com): "Only PetroClear filters are rigorously tested in the world's most extensive dispenser-filter research-and-development facility." Counterclaim ¶ 14. The line appears as the topic sentence of the second paragraph on the PetroClear homepage, and the next sentence lauds "this doggedness" as a marker of the quality of PetroClear filters. Homepage Screenshot [42-4]. In its Counterclaim, CIMCO alleges that qualifying Champion Laboratories' research-and-development facility as "the world's most extensive" is false and misleading. CIMCO argues that no industry-recognized organization, group or association has awarded Champion Laboratories' facility that accolade. Counterclaim ¶ 16. By comparison, CIMCO's Cim-Tek filters "have been tested and recognized by an independent or third party facility, Underwriters Laboratories." Counterclaim ¶¶ 15, 17.

In moving to dismiss, Champion Laboratories argues that Advertisement 1 is inactionable puffery. Citing *Smith-Victor Corp. v. Sylvania Electric Products, Inc.*, 242 F. Supp. 302 (N.D. Ill. 1965), and *Atari Corp. v. The 3DO Company*, No. 94-20298, 1994 WL 723601 (N.D. Cal. May 16, 1994), Champion Laboratories argues that the "world's most extensive" description is not a specific factual assertion, lacks any quantification and no reasonable buyer would rely on the statement when

5

deciding whether to purchase PetroClear filters or not. In *Smith-Victor*, 242 F. Supp. at 308, the Court, on a motion to dismiss, found that the defendant's statement that its lamps were "far brighter than any lamp ever before offered for home movies" was inactionable puffery. Unlike other statements found to be actionable, this one did not quantify any characteristics of the sold lamps. *Id.* at 308-09. Likewise, in *Atari*, 1994 WL 723601, at *2, the Court denied the competitor's motion for a temporary restraining order. The Court found that the defendant competitor's slogan about its video game system—"the most advanced home gaming system in the universe"—was a general assertion of superiority and not the kind of "detailed or specific factual assertion" that is required to maintain a false advertising claim under the Lanham Act. *Id.*

In contrast to *Smith-Victor* and *Atari*, however, dismissal is not warranted here in light of the relevant market and the fact that Champion Laboratories' statement contains more detail. For example, in its Counterclaim, CIMCO has pled that there is an independent facility (Underwriters Laboratories) that tests fuel dispensing filters, so there is a plausible factual issue as to whether purchasers might misunderstand Champion Laboratories' statement about the "world's most extensive dispenser-filter research-and-development facility" as trumpeting accolades it received from a third-party or independent organization for PetroClear filters. In this regard, this case tracks *Adkins v. Nestle Purina PetCare Co.*, 973 F. Supp. 2d 905, 919 (N.D. Ill. 2013), where the Court found that the description "wholesome" was not puffery when used to describe dog treats. Even though not

quantifiable, like the challenged statement here, the Court in *Adkins* found that, at the very least, the word "wholesome" could convey an important sense of information about the product, namely, its safety. A similar, substantive inference also could be drawn by customers in the fuel dispensing filters market.

While the statement here, like the one in *Atari*, does contain some indicia of a general assertion of superiority (*i.e.*, "the *world's* most extensive … facility"), it bears repeating that because this Court must look at context to determine if a statement is false, the issue of puffery is not amenable to resolution on a motion to dismiss in this case. *Mead Johnson*, 209 F.3d at 1034; *B. Sanfield*, 168 F.3d at 972 n.3; *Abbott Laboratories*, 971 F.2d at 13 (7th Cir. 1992); *LG Electronics*, 661 F. Supp. 2d at 948. For these reasons, this Court cannot conclude at this early stage in the proceedings that Advertisement 1 is puffery.

### 2. Advertisement 2: "Stop Flow"

According to CIMCO's Counterclaim, Champion Laboratories also falsely reported certain test results, claiming that an independent testing lab, Southwest Research Institute, found that PetroClear filters "stop" the flow of contaminated fuel when, in fact, the lab only found that PetroClear filters "slow" the flow of contaminated fuel. Counterclaim ¶¶ 20-25. Southwest Research Institute originally published the test results on July 7, 2006. 7/6/06 Letter [42-7]. Champion Laboratories has since posted and disseminated the results—falsely according to CIMCO—in a video on its website, a May 2006 advertisement in

National Petroleum News and, among other places, a 2009 presentation to the Petroleum Equipment Institute. Counterclaim ¶¶ 19-22, 25, 73.

Champion Laboratories argues in its motion to dismiss that CIMCO's second claim is time-barred under the applicable statute of limitations and, alternatively, pursuant to the doctrine of laches. Turning first to the statute of limitations, the Lanham Act does not provide its own statute of limitations but instead incorporates the analogous state statute of limitations. *Hot Wax*, 191 F.3d at 821. In Illinois, the analogous state statute is the Illinois Consumer Fraud and Deceptive Business Practices Act, which has a three-year statute of limitations. *Sarkis' Cafe, Inc. v. Sarks in the Park, LLC*, No. 12-9686, 2013 WL 6632741, at *3 (N.D. Ill. Dec. 16, 2013); *Clever Ideas, Inc. v. Citicorp Diners Club, Inc.*, No. 02-5096, 2003 WL 21982141, at *13 (N.D. Ill. Aug. 20, 2003). A three-year statute of limitations also applies to CIMCO's Illinois Deceptive Business Practices Act claim. *Clever Ideas*, 2003 WL 21982141, at *13.

Champion Laboratories argues that CIMCO pled that it was aware of Champion Laboratories' purportedly false or misleading advertisements in 2006, so the statute of limitations period purportedly ended in 2009—years before the instant Counterclaim was brought. To show CIMCO's knowledge, Champion Laboratories points to a cease and desist letter CIMCO sent to Champion Laboratories. Counterclaim ¶ 71. While the date of this letter is not pled, CIMCO does not challenge that it had the requisite knowledge more than three years before filing its Counterclaim.

8

Despite part of Champion Laboratories' allegedly infringing conduct occurring before the statute of limitations, this Court finds that the "continuing violation doctrine" renders that conduct actionable, at least based on the present factual record at this stage in the proceedings. The continuing violation doctrine allows CIMCO to bring an action for conduct that occurred outside the statute of limitations period provided that, as here, the last infringing act occurred within the statutory period. *Taylor v. Meirick*, 712 F.2d 1112, 1117-18 (7th Cir. 1983) (applying the continuing violation doctrine to a Copyright Act claim regarding the unlawful reproduction of maps). In *Taylor*, the initial act of copying occurred outside the three-year statute of limitations period, but the copying continued into the period, thereby establishing a continuing violation and allowing the claim to proceed. *Id.* at 1118-19.

District courts in this Circuit are split regarding whether *Taylor* remains good law in light of the Seventh Circuit's subsequent elaboration (and seeming limitation) of the continuing violation doctrine in *Dasgupta v. University of Wisconsin Board of Regents*, 121 F.3d 1138, 1139-40 (7th Cir. 1997), *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 992-93 (7th Cir. 2002), and other cases. As the Court explained in *Peterson v. Harley-Davidson, Inc.*, No. 12-381, 2012 WL 3113184, at *3 (E.D. Wis. July 31, 2012), in *Taylor*, there was a continuing violation even though the defendant's pre-statute of limitations acts of copying were distinct violations of the Copyright Act that could have independently sustained a claim thereunder. By comparison, in *Dasgupta* and *CSC Holdings*, the Seventh Circuit explained that a

9

continuing violation is one where the pre-statute of limitations conduct, unlike in *Taylor*, is not actionable by itself.

The Seventh Circuit in *Dasgupta*, 121 F.3d at 1139, a Title VII employment discrimination case, clarified the criteria for invoking the continuing violation doctrine, stating that "a continuing violation is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period." The continuing violation doctrine, as formulated in *Dasgupta*, did not save the discrimination claim there. The employer's pre-statute of limitations purported misconduct would have independently supported a Title VII suit. *Id.* at 1139-40. Likewise, in *CSC Holdings*, 309 F.3d at 992, the Seventh Circuit found that each sale of an illegal cable decoder was an independent violation of the Cable Communications Policy Act and not a continuing violation. *Dasgupta* and *CSC Holdings* thus are hard to reconcile with *Taylor*.

Despite the limiting language in *Dasgupta* and *CSC Holdings*, three District Courts in this Circuit, all in trademark and copyright infringement cases, concluded that *Taylor* nonetheless still controls. *Sarkis' Cafe*, 2013 WL 6632741, at *3-4; *Persis International, Inc. v. Burgett, Inc.*, No. 09-7451, 2012 WL 4176877, at *4 & n.5 (N.D. Ill. Sept. 18, 2012); *Peterson*, 2012 WL 3113184, at *2-4. In these cases, the Courts reason that the circumstances present in *Taylor* (a copyright infringement claim) more closely resembled those at issue there (trademark and copyright infringement claims) as compared to *Dasgupta* (employment

10

discrimination claim) and the other cases. By comparison, one District Court pointed to the recent trend in Seventh Circuit decisions and disagreed, "powerfully convinced" that the Seventh Circuit will overturn its more than 30 year old decision in *Taylor* once given the opportunity to do so. *Leventhal v. Schenberg*, 917 F. Supp. 2d 837, 845-46 (N.D. Ill. 2013). This Court declines to make the same prediction, and, instead, follows that majority approach that *Taylor* remains good law.

Having determined that *Taylor* controls, it follows that CIMCO has pled a viable claim. CIMCO alleges that Champion Laboratories continues to misrepresent Southwest Research Institute's test results, Counterclaim ¶ 128, and this Court must take that allegation as true at this stage of the case. The statute of limitations thus does not bar CIMCO's claims relating to Advertisement 2.

Alternatively, Champion Laboratories argues that this Court should bar CIMCO's claims based on the doctrine of laches. As with the statute of limitations defense, laches also is an affirmative defense, and the Federal Rules of Civil Procedure do not require CIMCO to anticipate and plead around affirmative defenses. Fed. R. Civ. P. 8(c)(1); *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). Laches is an equitable remedy that allows the Court to cut off the right to sue when the plaintiff waited too long before bringing suit. For laches to apply, however, Champion Laboratories must show: (1) an "unreasonable" lack of diligence by CIMCO; and (2) "prejudice" arising therefrom. *Hot Wax,* 191 F.3d at 820.

This is a fact intensive inquiry that is not amenable to resolution at the motion to dismiss stage under the facts present here. Based on the Counterclaim alone, and drawing all inferences in favor of CIMCO as the nonmoving party, this Court has no basis to determine that CIMCO's delay in raising the "stop flow" claim was unreasonable or caused Champion Laboratories any resulting prejudice. As to reasonableness, although there is no dispute that CIMCO knew about the nature of the "stop flow" claim sometime before the three year statute of limitations commenced, *see* Counterclaim ¶ 71, that does not mean that CIMCO's purported delay was unreasonable as a matter of law. Reasonableness depends on the totality of the circumstances, and CIMCO had no obligation to include those circumstances in its Counterclaim in response to a laches affirmative defense. Turning to prejudice, CIMCO has not pled facts that conclusively establish that Champion Laboratories was prejudiced by any unreasonable delay. Although it may be reasonable to infer that CIMCO's delay prejudiced Champion Laboratories, the Counterclaim's allegations do not rule out competing reasonable inferences.

Confirming this Court's decision, other Courts in this Circuit similarly have denied laches defenses to Lanham Act claims as premature at the motion to dismiss stage. *E.g.*, *Sarkis' Cafe*, 2013 WL 6632741, at *4-5; *Peterson*, 2012 WL 3113184, at *1. Champion Laboratories cites *Smith v. Caterpillar, Inc.*, 338 F.3d 730 (7th Cir. 2003), but that case is distinguishable. The Court in *Smith* granted the laches defense, but it did so at the summary judgment stage, unlike here, after the factual record establishing the length of delay and prejudice to the defendant had been fully

developed. *Id.* at 733-35. CIMCO has not had the same opportunity to develop the factual record.

For these reasons, Champion Laboratories' motion to dismiss CIMCO's "stop flow" claim is denied, so Champion Laboratories' motion is premature.

### 3. Advertisement 3: September 2010 Email

In a September 7, 2010 email addressed to "Gilbarco and Wayne Authorized Distributors in Latin America," Robert Galvin of Petro Sistemas (Champion Laboratories' "Manufacturer's Representative") repeated the aforementioned "stop flow" statement and also wrote, falsely according to CIMCO, that CIMCO does not perform "hermeticity" testing on its filters. Counterclaim ¶¶ 111-13, 121-24. Gavin further stated, again falsely according to CIMCO, that a leading customer had switched to purchasing only PetroClear filters and that CIMCO purchased components for its filters from Champion Laboratories. Counterclaim ¶¶ 114-20.

In moving to dismiss, Champion Laboratories argues that CIMCO has not shown that Gavin's email, which was directed to distributors in Latin America, caused the geographic harm in the United States and the State of Illinois necessary to trigger the Lanham Act and the Illinois Deceptive Trade Practices Act, respectively. CIMCO responds that it pled that Galvin was "responsible for all sales of PetroClear products in the Caribbean, Central America and South America," Counterclaim ¶ 111, and Puerto Rico is part of the Caribbean.

To determine whether the Lanham Act reaches foreign business activities, Courts evaluate three factors: (1) whether the allegedly infringing party was a

United States citizen; (2) whether the party's actions affected commerce in the United States; and (3) whether any foreign trademark law conflicted with American trademark law. *Bernstein v. Medicis Pharmaceutical Corp.*, No. 03-5256, 2004 WL 2092001, at *2 (N.D. Ill. Sept. 15, 2004); *Thomas & Betts Corp. v. Panduit Corp.*, 71 F. Supp. 2d 838, 841 (N.D. Ill. 1999). The presence or absence of any one factor is not dispositive. *Thomas & Betts*, 71 F. Supp. 2d at 841; *Libbey Glass, Inc. v. Oneida Ltd.*, 61 F. Supp. 2d 720, 723 (N.D. Ohio 1999) (citing Fourth and Sixth Circuit cases). The second factor is "most commonly" met by allegations that the infringing activity entered the United States. *ACG Products, Ltd. v. Gu*, No. 10-716, 2011 WL 7748354, at *3 (W.D. Wis. Nov. 4, 2011) (surveying cases nationwide). Likewise, under the Illinois Deceptive Trade Practices Act, the circumstances that relate to the disputed transaction must occur "primarily and substantially in Illinois." *LG Electronics*, 661 F. Supp. 2d at 858; *Miche Bag, LLC v. Be You, LLC*, No. 11-720, 2011 WL 4449683, at *6 (N.D. Ill. Sept. 26, 2011).

In *Bernstein*, 2004 WL 2092001, at *1-2, the relevant conduct only affected commerce occurring abroad, so the Court dismissed the Lanham Act claim there. Specifically, the allegedly infringing defendant showed, through unrebutted affidavits, that it had manufactured, labeled and marketed the drug at issue only in the Canadian market. *Id.* at *2. There also was no effect on United States commerce in *ACG Products*, 2011 WL 7748354, at *2-4, so the Court there likewise dismissed the Lanham Act claim. The Wisconsin plaintiff's complaint in *ACG Products* lacked any allegation that the allegedly counterfeit product, which was

14

sold in China, entered the United States or even was purchased by American citizens outside the United States. *ACG Products*, 2011 WL 7748354, at *2, 4. By comparison, the Seventh Circuit found the Lanham Act's territorial requirements satisfied in *Scotch Whisky Association v. Barton Distilling Co.*, 489 F.2d 809, 812-13 (7th Cir. 1973), because, unlike here, the defendant had sold the allegedly infringing product in the Panama Canal Zone, which was then part of United States territory.

On this issue, as in *Bernstein* and *ACG Productions*, Champion Laboratories' motion to dismiss is granted because CIMCO has not shown any effect on United States commerce. Although a limited portion of Gavin's sales territory may have included Puerto Rico, that fact alone is insufficient to establish that the particular email at issue here affected commerce in the United States, let alone in the State of Illinois. There, for example, is no allegation that Gavin's allegedly false statement affected sales anywhere in the United States or its territories. There also is no allegation that CIMCO suffered injury in the United States market. Indeed, in the section of the Counterclaim about the email, CIMCO's damages allegation is geographically neutral:

> CIMCO has suffered a significant loss in business over an extended period of time due to Champion's deliberate, intentional and coordinated attack on the integrity of CIMCO and its products.

Counterclaim ¶ 125.

CIMCO relies on *Libbey Glass*, but that case is distinguishable. Consistent with the lessons from *ACG Products*, the Court in *Libbey Glass* denied the

defendant's summary judgment motion based on the undisputed evidence that, unlike here, it sold the allegedly infringing product in the United States. *Libbey Glass*, 61 F. Supp. 2d at 724. The Court did, as CIMCO argues, analyze cases finding the Lanham Act's territorial requirement satisfied from a diversion of sales or reputational injury to a domestic plaintiff, but CIMCO reads too much into that discussion. *Id.* at 723-24. *ACG Products*, as discussed above, shows that injury to a domestic victim is not necessarily sufficient to prove an effect on United States commerce; the plaintiff in that case, like CIMCO, was a domestic corporation. *ACG Products*, 2011 WL 7748354, at *1. This case is closer to *ACG Products* than *Libbey Glass*. A Court in this District also has warned that CIMCO's broad view of geographic harm in the United States stretches the Lanham Act's territorial reach too far. *The Alcar Group, Inc. v. Corporate Performance Systems, Ltd.*, 109 F.2d 948, 950-52 (N.D. Ill. 2000).

For these reasons, Champion Laboratories' motion to dismiss CIMCO's claim with respect to Advertisement 3 is granted.

### B. Motion to Strike

Champion Laboratories moves under Rule 12(f) to strike CIMCO's 11 affirmative defenses [42] to Champion Laboratories' Complaint [1]. This Court has reviewed CIMCO's affirmative defenses and the preceding "Affirmative Defenses – General Allegations," and finds that 10 of the 11 affirmative defenses are improper or inadequately pled. The exception is the Ninth Affirmative Defense (statute of limitations).

16

Of the stricken affirmative defenses, three of them—the Second Affirmative Defense (lack of deception); the Seventh Affirmative Defense (incorrect allegations); and the Eighth Affirmative Defense (no injury)—dispute the merits of Champion Laboratories' claims and thus already have been put in issue by CIMCO's denials of Champion Laboratories' allegations in the Complaint. These affirmative defenses are improper under Federal Rule of Civil Procedure 8(c). *World Kitchen, LLC v. American Ceramic Society*, No. 12-8626, 2015 WL 3429380, at *2 (N.D. Ill. May 27, 2015); *Sarkis' Cafe, Inc. v. Sarks in the Park, LLC*, 55 F. Supp. 3d 1034, 1041 (N.D. Ill. 2014); *Kemper Securities, Inc. v. Banco Santander Trust & Banking Corp. (Bahamas) Ltd.*, No. 93-4588, 1993 WL 401914, at *1 (N.D. Ill. Oct. 7, 1993).

Another affirmative defense—the Eleventh Affirmative Defense (Federal Rules of Evidence 404(b) and 408(a))—is not an affirmative defense but rather a claim that certain evidence should not be admitted in later motion practice, at a hearing or at trial. CIMCO can raise such claims if necessary in this litigation, and does not require the assertion of an affirmative defense to preserve these evidentiary objections.

Last, six affirmatives defenses—the First Affirmative Defense (failure to state a claim); the Third Affirmative Defense (commercial speech protection); the Fourth Affirmative Defense (competition privilege); the Fifth Affirmative Defense (unclean hands); the Sixth Affirmative Defense (unjust enrichment); and the Tenth Affirmative Defense (laches)—are supported by no facts at all, even when this Court considers CIMCO's "Affirmative Defenses – General Allegations," and thus are

17

stricken as inadequately pled. *Jones v. UPR Products, Inc.*, No. 14-1248, 2015 WL 3463367, at *2 (N.D. Ill. May 29, 2015); *Sarkis' Cafe*, 55 F. Supp. 3d at 1040.

For these reasons, Champion Laboratories' motion to strike is granted in part and denied in part. This Court, however, grants CIMCO leave to re-plead the Third, Fifth, Sixth and Tenth Affirmative Defenses if that can be done consistent with Federal Rule of Civil Procedure 11. The Second, Seventh, Eighth and Eleventh Affirmative Defenses cannot be re-pled to be made unobjectionable, so they are stricken with prejudice.

## IV. Conclusion

Champion Laboratories' motion to dismiss [47] and motion to strike [47] are granted in part and denied in part. Consistent with this Memorandum Opinion and Order, CIMCO has until January 27, 2016 to file an Amended Counterclaim and to re-plead the affirmative defenses that this Court struck without prejudice, if it can do so consistent with its Rule 11 obligations. Champion Laboratories has until February 10, 2016 to answer or otherwise respond to any Amended Counterclaim and the re-pled affirmative defenses and, if none is filed, to answer the remaining portions of the Counterclaim [42]. The next status hearing set for January 19, 2016 is stricken, and hereby reset to February 18, 2016, at 9:45 a.m., in Courtroom 1725.

Dated: January 14, 2016

Entered:

*[signature]*

United States District Judge